UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JASON E. COBB,

    Plaintiff,

    v.

CRISTINA CONSUNJI, et al.,

    Defendants.
_____/

No. C-11-02496 DMR

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

    Defendants Christina Consunji, Chris Glasser, Terry Johnson, Cass Kalinski, Jeff Monk, and Vanita Nemali move the court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss *pro se* Plaintiff Jason E. Cobb's Amended Complaint for failing to state a claim upon which relief can be granted. This matter is appropriate for resolution without oral argument pursuant to Local Civil Rule 7-1(b). For the reasons stated below, the court GRANTS Defendants' motion and DISMISSES Plaintiff's Amended Complaint WITH PREJUDICE.

**I. PROCEDURAL BACKGROUND**

    In May 2011, Plaintiff Cobb brought suit against Defendants Consunji, Glasser, Johnson, Kalinski, Monk, Nemali, and Does 1-3, all of whom are, or were, his coworkers at Cisco Systems, Inc. ("Cisco"). Plaintiff originally alleged claims for 1) mail fraud under 18 U.S.C. § 1341; 2) wire fraud under 18 U.S.C. § 1343; 3) retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"); 4) harassment based on religion under Title VII; 5) interception

and disclosure of wire, oral, or electronic communications prohibited under 18 U.S.C. § 2511 and California Penal Code section 630 *et seq.*; 6) violation of California Penal Code section 502, the Comprehensive Computer Data Access and Fraud Act; and 7) intentional infliction of emotional distress.

Defendants moved to dismiss the complaint. On September 27, 2011, the court granted the motion. The court dismissed claims 1 and 2 with prejudice and claims 3 and 4 without prejudice. The court dismissed claims 5, 6, and 7, and granted Plaintiff leave to amend his complaint to add facts necessary to "nudge[]" those claims "across the line from conceivable to plausible." *See* Order on Defs.' Mot. to Dismiss 8-9, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

On October 18, 2011, Plaintiff filed his Amended Complaint, which now alleges 1) three separate violations of 18 U.S.C. § 1962(c) ("the RICO statute"), based on wire fraud, extortion, and theft; 2) invasion of privacy based on "wiretapping of telegraph or telephone communications"; 3) invasion of privacy based on "intercepting or receiving cellular radio telephone communications"; 4) violation of California Penal Code section 502, the Comprehensive Computer Data Access and Fraud Act; 5) nuisance; and 6) criminal conspiracy. [Docket No. 39.] On October 25, 2011, Plaintiff filed a "Notice of Errata re First Amended Complaint Filing," and submitted a corrected version of his Amended Complaint with exhibits. [Docket No. 40.]

On November 1, 2011, Defendants filed the present motion to dismiss the Amended Complaint. [Docket No. 41.] Plaintiff filed a timely opposition to the motion, and attached a proposed second amended complaint to his opposition, which appears to be an attempt to cure his Amended Complaint of some of the deficiencies highlighted in Defendants' motion. [Docket No. 47.]

## II. FACTUAL BACKGROUND

Plaintiff's Amended Complaint largely echoes his Complaint. He continues to allege that Defendants participated in schemes to listen to and record his telephone conversations, facilitate a transfer of Plaintiff within the company by fraudulent means, and launch cyber-attacks against him. In the Amended Complaint, he adds the allegation that these schemes were undertaken with the

ultimate goal of terminating Plaintiff's employment by means of planned layoffs.[1] (Am. Compl. ¶ 3.) He further contends that these acts were motivated by Defendants' "adverse reaction to statements and views" expressed by him during "various unlawfully monitored personal phone calls." (Am. Compl. ¶ 2.)

According to Plaintiff, in May 2010 he began a new role at Cisco, reporting to Defendant Glasser in the COVC IT group. (Am. Compl. ¶¶ 2, 4, 10.) He experienced some friction with his coworkers upon joining the new group. Specifically, he claims that Shenita McKinney, a "non-party co-conspirator" and coworker, engaged in "recurring criticisms and venting sessions . . . [that] were initially born of a feeling that Plaintiff was not ramping up quickly enough in transitioning to the team." (Am. Compl. ¶ 4.)

In early August 2010, during a personal phone call he made to an unnamed person on his Cisco IP phone while working from home, Plaintiff vented about McKinney's "abusive speech," and referred to her as "crazy." (Am. Compl. ¶¶ 5, 10.) He further alleges that during the call, he talked about a problem he was having with another coworker, Hester Whitehurst, and also criticized Glasser's management style and failure to "step[] up" to address McKinney's behavior. (Am. Compl. ¶ 10.)

Following that telephone call, Plaintiff claims that his relationship with McKinney deteriorated to the point of her becoming "abusive" towards him. (Am. Compl. ¶ 5.) He alleges that McKinney's behavior toward Plaintiff worsened "*exponentially* as she became openly antagonistic and hostile." (Am. Compl. ¶ 6; emphasis in original.) Shortly thereafter, during a status meeting, Plaintiff alleges that McKinney stared at him "with a menacing, predatory look," and that the "look and message were clear: 'I'm going to get you.'" (Am. Compl. ¶ 11.) Plaintiff met with Glasser the next day. According to Plaintiff, during this meeting Glasser "made remarks that constituted direct quotes" from Plaintiff's personal telephone call, including denouncing the behavior of Whitehurst, the coworker about whom Plaintiff had complained. (Am. Compl. ¶ 12.) Glasser also told Plaintiff that he wanted to schedule a weekly one-on-one meeting with him. (Am. Compl. ¶ 12.) Plaintiff

---

[1] It appears that Plaintiff is still employed at Cisco.

3

alleges that Glasser's comments, in conjunction with McKinney's behavior during the meeting the previous day, made it "clear to Plaintiff" that the personal call he had made earlier that week "had been monitored" and that the content of the call had been disclosed to McKinney. (Am. Compl. ¶ 12.) Plaintiff's belief that the personal phone call he had made from his home had been monitored also appears to be based on his allegation that Defendant Johnson has acknowledged that Cisco has the technical capability to monitor IP-based calls made by its employees (Am. Compl. ¶ 8), and that Plaintiff has "heard sample excerpts of employee calls that were lawfully monitored and recorded." (Am. Compl. ¶ 9.)

Thereafter, Plaintiff contends that he advised Glasser that he was considering a move to another group within the company. (Am. Compl. ¶ 13.) Plaintiff claims that Glasser expressed his support, but that Glasser's main concern was "the risk of losing headcount," which then "underscored his actions thereafter in conjunction with his general and standing feelings of malice toward Plaintiff." (Am. Compl. ¶¶ 13, 14.)

Plaintiff began searching for a new position within Cisco. He pursued a position in the "Entitlement" group, but was unsuccessful. (Am. Compl. ¶ 15.) Plaintiff alleges that Glasser made unspecified efforts to "influence a negative outcome" for Plaintiff through communications with the hiring manager and/or recruiter for the position. (Am. Compl. ¶ 15.) According to Plaintiff, Glasser subsequently suggested Plaintiff pursue an available position within another group, the COVC IT PMO team, managed by Defendant Jeff Monk. (Am. Compl. ¶ 16.)

Plaintiff contends that the difficulties in his work environment with McKinney continued, and that at that point, there was a "micro-scheme" to push Plaintiff out of Cisco "pursuant to the arbitrary conclusions that had been made by Glasser and others about Plaintiff as a result of the unlawful monitoring that had occurred." (Am. Compl. ¶ 17.) Plaintiff alleges that he soon began experiencing health problems. In September 2010, he was admitted to the hospital with chest pain/congestion, heart palpitations, and shortness of breath. (Am. Compl. ¶ 19.) He then intensified his search for a new position. In September and October 2010, Plaintiff interviewed for two other positions within Cisco. (Am. Compl. ¶¶ 20, 21.)

Plaintiff alleges that during this time, Defendants Glasser, Kalinski, Monk and Nemali had been conspiring to formulate a plan to orchestrate Plaintiff's transition to the PMO team managed by Monk, and that they were "motivated by headcount concerns." (Am. Compl. ¶ 23.) Plaintiff claims the conspirators "coveted [Plaintiff's] competitive intangibles and know-how." (Am. Compl. ¶ 23.) On October 20, 2010, Plaintiff purportedly received an offer for the position on Monk's team. (Am. Compl. ¶¶ 24, 26.)

Shortly thereafter, Plaintiff learned that he had not been offered either of the other two positions for which he was applying. (Am. Compl. ¶¶ 28, 29.) Plaintiff alleges that Defendant Consunji had partnered with Glasser to ensure "a negative outcome" with respect to one of the positions Plaintiff had sought. (Am. Compl. ¶ 28.) Ultimately, Plaintiff accepted the position with Monk's team. Prior to actually accepting the job, Plaintiff alleges he "began to be phased out" of his current role. (Am. Compl. ¶ 31.)

Thereafter, Plaintiff contends that efforts were made by "various individual contributors" to redirect his efforts to develop processes for a different set of tools than those he had thought he would be working with in the new position. (Am. Compl. ¶ 37.) According to Plaintiff, this was a departure from the stated purpose of his transition to the group, and thereby supports his belief that the reasons for his transfer to the team had been manufactured. (Am. Compl. ¶ 38.) Plaintiff alleges that "varied actions" on the part of many of his coworkers were part of "an effort to execute a long con," the purpose of which was to "retroactively legitimize Plaintiff's" move to the new team. (Am. Compl. ¶ 39.)

Plaintiff also makes various allegations regarding a series of technical difficulties with his company and personal computers, including loss of emails and inability to access project-related documents. (Am. Compl. ¶¶ 40-42, 44.) Plaintiff contends that these problems, along with the loss of meeting records, documents, and malware scan logs, constitute evidence spoliation. (Am. Compl. ¶ 43.) Plaintiff also alleges that in December 2010, "key data on his home PC was deleted pursuant to an evident act of computer intrusion." (Am. Compl. ¶ 45.) Plaintiff alleges these "cyber-attacks" were "a coercive tool" to encourage Plaintiff to "'get with the program.'" (Am. Compl. ¶ 45.) Plaintiff attributes these attacks to Glasser, given Glasser's "skill set and background." (Am.

5

Compl. ¶ 45; Ex. C.) Plaintiff alleges he discussed these concerns with Johnson in January 2011, and that he believes this call was also monitored and the contents disclosed to others, including Glasser. (Am. Compl. ¶ 46.)

Finally, Plaintiff makes a series of other allegations regarding suspicious technical problems he experienced with his computers. (Am. Compl. ¶¶ 47-51.) In March 2011, Plaintiff submitted a formal complaint to "COBC@cisco.com" and "ethics@cisco.com," but did not receive a response. (Am. Compl. ¶ 57.) In February 2011, after contacting an FBI agent about the "cyber-attacks" he had been experiencing and referencing evidence he possessed of such attacks, an "associate" of Plaintiff's experienced his or her own a cyber-attack and the key evidence of the attacks to which Plaintiff had referred was destroyed. (Am. Compl. ¶¶ 75, 76.)

Finally, Plaintiff alleges that he and his family have experienced issues with their cell phones that indicate that they are being monitored, such as "echoes, static, excessive heat, phones turning on by themselves or failing to shut off when attempts are made to do so," and alleges that hackers "have remotely converted his cell phone into a roving bug and/or have cloned his phone." (Am. Compl. ¶ 74.)

## II. DISCUSSION

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failing to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation & quotation marks omitted). When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id*. (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). A claim has facial plausibility when a plaintiff

"pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

Hence, the issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citations omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

**B.     Analysis**

    **1.     Plaintiff's First Claim**

Plaintiff's first claim is for three separate violations of 18 U.S.C. § 1962(c) ("the RICO statute"), based on wire fraud, extortion, and theft.

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). The elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotations & citation omitted). Section 1961(a) enumerates acts which are considered to be "racketeering activity" (i.e. "predicate acts"), including any act "'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 481

(1985) (citing 18 U.S.C. § 1961(1)). "Any recoverable damages occurring by reason of a violation of [section] 1962(c) will flow from the commission of the predicate acts." *Id*. at 497.

### a. RICO Claim Based on Wire Fraud

Plaintiff has alleged a RICO claim based a violation of the Wire Fraud Act, 18 U.S.C. § 1343. The Wire Fraud Act provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. "[A] wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) (citation omitted).

A claim under the Wire Fraud Act is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Id*. at 553-54. Thus, "[t]o avoid dismissal for inadequacy under Rule 9(b), [the] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (internal quotations & citation omitted). Further, the complaint must "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc); *see Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995). Where multiple defendants are involved, the plaintiff also must identify the role of each defendant in the alleged fraudulent scheme. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). Allegations of fraud cannot be made on information and belief. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

First, the allegedly fraudulent scheme of which Plaintiff complains does not fall within the purview of the Wire Fraud Act. Section 1343 codifies a "'direct' theory of fraud in which the object of the fraudulent scheme is to obtain money or other tangible property." *United States v. Williams*,

8

441 F.3d 716, 720 (9th Cir. 2006). The basis for Plaintiff's claim for wire fraud is that Defendants "conspired to conceive then implement a scheme to orchestrate and extort Plaintiff's transition to the COVC IT PMO team" managed by Defendant Monk. (Am. Compl. ¶ 63.) The Amended Complaint does not allege that any of the defendants fraudulently obtained money or anything of value from Plaintiff.

Second, the Amended Complaint fails to adequately allege fraudulent representations under Rule 9(b). Plaintiff alleges that after he "successfully interviewed" for a new position within Cisco and "appeared on the verge of obtaining" the position, Defendant Consunji, his former supervisor, participated in a discussion about Plaintiff with the recruiter for the job and "provided maliciously motivated input and misrepresentations" about Plaintiff "intended to influence and effect a negative outcome for Plaintiff." (Am. Compl. ¶ 63.) This generalized assertion of purportedly false statements is not sufficient to satisfy Rule 9(b), which requires Plaintiff to state "the specific content" of the actionable statements, *Odom*, 486 F.3d at 553-54, and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *GlenFed*, 42 F.3d at 1548.

In his proposed Second Amended Complaint, Plaintiff adds the date of a specific conversation he theorizes took place about him. He alleges that during that conversation, Defendant Consunji "would have misrepresented Plaintiff's flexible work schedule . . . as an indication of an uninspired work ethic," and that she "endeavored to misrepresent Plaintiff as a 'one trick pony.'" (Proposed Second Am. Compl. ¶ 70.) However, any such statements about Plaintiff do not rise to the level of fraud, as they appear to be expressions of opinion. Plaintiff also clarifies that he was "defrauded . . . in that he was deprived by fraudulent means of the financial gain he would have received as a result of obtaining said position." (Proposed Second Am. Compl. ¶ 73.) Yet Plaintiff makes no allegation that any of the Defendants gained financially by his being denied the position he sought, nor would any such allegation appear reasonable on these facts.

Essentially, the gravamen of Plaintiff's wire fraud claim is his failure to get a hoped-for position within Cisco, and his belief that his former supervisor played a role in his failure to be selected for the position by providing negative input about him. The Wire Fraud Act has no application in this situation. Therefore, this claim is dismissed.

### b. RICO Claim Based on Extortion

Plaintiff next alleges a RICO claim based on extortion in violation of California Penal Code section 518, which provides that "[e]xtortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." Cal. Pen. Code § 518. California Penal Code section 519 sets forth the four instances of what constitutes the requisite fear under section 518:

> Fear, such as will constitute extortion, may be induced by a threat, either:
>
> 1. To do an unlawful injury to the person or property of the individual threatened or of a third person; or,
>
> 2. To accuse the individual threatened, or any relative of his, or member of his family, of any crime; or,
>
> 3. To expose, or to impute to him or them any deformity, disgrace or crime; or,
>
> 4. To expose any secret affecting him or them.

Cal. Pen. Code § 519.

This claim is based upon Plaintiff's claim that Defendant Glasser and the other defendants "effected a scheme with intent to induce and extort Plaintiff's acceptance of the COVC IT PMO role," and that prior to his acceptance of the position, he "began being pushed out" of his former position. (Am. Compl. ¶ 67.) Plaintiff has not identified any attempt to "obtain[] property" from him and therefore has not adequately alleged an extortion claim. Further, the alleged conduct does not satisfy any of the enumerated categories of "threat" pursuant to section 519. This claim is dismissed.

### c. RICO Claim Based on Theft

Plaintiff's third RICO claim is based upon theft. Plaintiff's Amended Complaint purports to base this claim on California Penal Code section 482, which criminalizes the forgery or counterfeiting of railroad or steamship tickets. Such a claim does not appear relevant or applicable to the facts set forth in the Amended Complaint. Reading the Amended Complaint liberally, the court assumes Plaintiff meant to bring a claim pursuant to California Penal Code section 484, which defines and criminalizes theft. The section provides that

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

Cal. Pen. Code § 484. "Theft requires the specific intent to permanently deprive the owner of its property." *People v. Miller*, 81 Cal. App. 4th 1427, 1446 (2000).

This claim is based upon Plaintiff's allegation that after his transition to the COVC IT PMO team, he participated on conference calls to discuss development strategies, and that the calls were surreptitiously recorded. He alleges that this constituted the "acquisition of Plaintiff's competitive intangibles, knowledge, expertise, know-how and services." (Am. Compl. ¶ 70.) These allegations do not constitute theft under any of the provisions of section 484. Plaintiff does not allege that he was not paid for his labor nor does he allege that any defendant intended to "permanently deprive" him of his "competitive intangibles." Moreover, it is unclear whether a state law claim of theft qualifies as a predicate act for purposes of a RICO claim. This claim is dismissed.

### 2. Plaintiff's Second and Third Claims

Plaintiff's second claim is for invasion of privacy based on "wiretapping of telegraph or telephone communications" and his third claim is for invasion of privacy based on "intercepting or receiving cellular radio telephone communications."

Although not specified in the Amended Complaint, Plaintiff's second claim appears to be based upon 18 U.S.C. § 2511, the Wiretap Act, and California Penal Code section 630 *et seq.*, as was the fifth claim for relief in his original Complaint. Section 2511(1) subsections (a) and (c) provide that one who

> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; . . . [or] (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection

11

shall be subject to criminal liability and civil suit. *See* 18 U.S.C. § 2520 (providing for a private right of action for violation of the Wiretap Act). California Penal Code section 631 provides that

> Any person who . . . intentionally taps, or makes any unauthorized connection, . . . with any telegraph or telephone wire, line, cable, or instrument, . . . or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state

shall be subject to criminal liability and civil suit. *See* Cal. Penal Code § 637.2 (providing for a private right of action for violation).

This claim is based upon Plaintiff's allegation that Defendant Glasser monitored Plaintiff's personal telephone calls and disclosed the content of such calls with other Cisco employees. (Am. Compl. ¶ 72.) Plaintiff was previously granted leave to amend his complaint to add facts that "nudge[]" his claim that Defendant Glasser violated the Wiretap Act and/or California Penal Code section 630 *et seq*. "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiff has failed to do so. The Amended Complaint contains no new factual allegations that support an inference that Glasser or any other defendant monitored and recorded Plaintiff's telephone calls, and disclosed the contents of the communications therein. *See Epstein*, 83 F.3d at 1140 ("conclusory allegations of law and unwarranted inferences" are insufficient to defeat a motion to dismiss). Instead, Plaintiff has simply added statements of his beliefs about the unstated intentions and motivations of Glasser and the other defendants. Therefore, dismissal of this claim is appropriate.

Similarly, the conclusory factual allegations supporting Plaintiff's third claim, invasion of privacy based on "intercepting or receiving cellular radio telephone communications," are insufficient to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This claim is based upon the allegation that the cell phones of Plaintiff and his family members "are being monitored." (Am. Compl. ¶ 74.) Plaintiff alleges that he and his family have encountered symptoms such as "echoes, static, excessive heat, phones turning on by themselves or failing to shut off when attempts are made to do so." (Am. Compl. ¶ 74.) There are no factual allegations that demonstrate

12

1 that any defendant was or is in any way responsible for the problems Plaintiff and his family have
2 been experiencing with their cell phones. Dismissal of this claim is appropriate.

### 3. Plaintiff's Fourth Claim

Plaintiff's fourth claim is for violation of California's Comprehensive Computer Data Access and Fraud Act, California Penal Code section 502, which seeks to protect individuals, businesses, and governmental agencies from "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a).

This claim previously was dismissed, and Plaintiff was granted leave to amend his complaint to add facts to support his allegations that Defendant Glasser and/or Defendant Johnson violated California Penal Code section 502 with respect to "cyber-attacks" on Plaintiff's home and work computers. Plaintiff did not do so. Plaintiff has made no factual allegations that plausibly support his claim that any of the defendants are responsible for this activity. The only allegations Plaintiff makes to link the cyber-attacks to any of the Defendants is Defendant Glasser's "skill set and background" in computers (Am. Compl. ¶ 45), and the fact that on one occasion, Defendant Kalinski asked about his weekend "in a sly and devious tone, which Plaintiff felt was a veiled reference to the computer intrusion." (Am. Compl. ¶ 81.) In his proposed second amended complaint, Plaintiff makes no additional allegations linking the activity to any of the defendants, other than to clarify that the claim is based upon acts perpetrated by Defendants Glasser and Kalinski. There is nothing plausible about an inference from these facts that Defendant Glasser or any other defendant is responsible for the problems Plaintiff has experienced with his computers. See *Twombly*, 550 U.S. at 570. Therefore, this claim is dismissed.

### 4. Plaintiff's Fifth Claim

Plaintiff's fifth claim is for nuisance. Specifically, he alleges that the "series of micro-schemes" described in the Amended Complaint "constituted a continuing nuisance that has adversely affected [his] health . . . and [were] *designed* and intended to vex, annoy, harass and notably to distract Plaintiff . . ." (Am. Compl. ¶ 83; emphasis in original.)

"[T]he essence of a private nuisance is its interference with the use and enjoyment of land." *Oliver v. AT&T Wireless Servs.*, 76 Cal. App. 4th 521, 534 (1999). Plaintiff does not allege that the

"micro-schemes" are directed at any land or real property that he owns or inhabits. Accordingly, he has failed to allege a "nuisance." Plaintiff did not include this claim in his proposed Second Amended Complaint. Therefore, it appears that Plaintiff concedes that amendment of the claim would be futile and accordingly has abandoned it. Therefore, this claim is dismissed.

### 5. Plaintiff's Sixth Claim

Plaintiff's sixth and final claim is for "criminal conspiracy." Plaintiff alleges "[a] range of criminal acts have been perpetrated against Plaintiff and his family including unlawful phone monitoring, cell phone monitoring, disclosure of wire communications, computer intrusion etc." (Am. Compl. ¶ 85.)

In his proposed second amended complaint, Plaintiff clarifies that this cause of action is based upon California Penal Code section 182. Section 182 is a criminal statute that provides no private right of action or civil remedy. *See Harvey v. City of South Lake Tahoe*, No. S-10-1653, 2011 WL 3501687, at *7 (E.D. Cal. Aug. 9, 2011) (dismissing claim based on violation of criminal conspiracy statute without leave to amend). Therefore, Plaintiff's claim for criminal conspiracy is dismissed with prejudice.

To the extent Plaintiff seeks to bring a claim for *civil* conspiracy, such cause of action must also be dismissed. Under California law, there is no separate and distinct tort cause of action for civil conspiracy. *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997). Instead, it is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its preparation." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-11 (1994). Thus, a civil conspiracy claim can only succeed if it is linked to an independently tortious act. *Entm't Research Group*, 122 F.3d at 1228. If a plaintiff fails to plead the underlying claim, the corresponding conspiracy claim must also fail. *Id.* (citing *Applied Equip. Corp.*, 7 Cal.4th at 511 ("It is the acts done and not the conspiracy to do them which should be regarded as the essence of a civil action.") (internal citation omitted).

1  Here, as Plaintiff's underlying claims of telephone and cell phone monitoring, disclosure of
2  communications, and cyber-attacks fail, any claim for civil conspiracy based on those claims must
3  also fail. Accordingly, a claim for civil conspiracy is dismissed.

4  **C.  Leave to Amend**

5  Federal Rule of Civil Procedure 15(a) establishes that leave to amend "shall be freely given
6  when justice so requires." In general, valid reasons for denying leave to amend include undue delay,
7  bad faith, prejudice, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court may also
8  consider whether pleadings have previously been amended. *Bonin v. Calderon*, 59 F.3d 815, 845
9  (9th Cir. 1995).

10  In this case, Plaintiff has already been afforded the opportunity to amend his complaint.
11  Moreover, Plaintiff lodged a proposed Second Amended Complaint, which presumably attempts to
12  address the deficiencies identified by Defendants' motion. The Second Amended Complaint drops
13  certain claims (Claims I(b) and (c) and Claim V), thereby conceding the futility of further
14  amendment. With respect to other claims, the Second Amended Complaint either fails to make
15  further allegations (Claim III), adds allegations that are insufficient to support the claim (Claim I(a),
16  Claim II, and Claim IV), or is wholly dependent on the viability of other claims (Claim VI). For
17  these reasons, the court finds that further leave to amend would be futile. The complaint is therefore
18  dismissed without leave to amend.

19  ### III. CONCLUSION

20  For the foregoing reasons, the court GRANTS Defendants' motion and DISMISSES
21  Plaintiff's Amended Complaint WITH PREJUDICE.

23  IT IS SO ORDERED.

25  Dated: December 28, 2011



DONNA M. RYU
United States Magistrate Judge

15